UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG HILL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:14CV843 NCC |
| | ) | |
| JAY CASSADY, | ) | |
| | ) | |
| Respondent, | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review and final disposition of a petition for writ of habeas corpus filed by Craig Hill ("Hill" or "petitioner") pursuant to 28 U.S.C. § 2254.[1] Petitioner seeks to overturn his conviction for first-degree murder because of alleged trial court error and ineffective assistance of counsel. Respondent contends that several of petitioner's claims are procedurally defaulted and that all of his claims are meritless. Respondent is correct, and the Court will dismiss this action without further proceedings.

**Background**

The Missouri Court of Appeals, Eastern District, summarized the facts as follows:

> On June 28, 2005, in the early afternoon, Doanita Whittier (Whittier) got into an argument with some women outside a store in the City of St. Louis. Later that afternoon Whittier's boyfriend, Jason Holman (Holman), was walking to the store where the argument had occurred when a man got off a bus nearby. Holman did not know the man but identified [Hill] in court as the man who exited the bus. [Hill] began talking to the women that Whittier had argued with. The women knew that Holman was dating Whittier and were pointing at Holman while talking with [Hill]. As this was happening, two men noticed that [Hill] had a gun, and grabbed [Hill] and held him up against a fence. Holman and a third man were able to get the gun away from [Hill]. After [Hill] was disarmed, Holman and [Hill]

---

[1] The parties consented to the jurisdiction of the undersigned magistrate judge to resolve this proceeding. 28 U.S.C. § 636(c).

fought briefly. Holman "got the best of" [Hill] and the fight was broken up. Holman returned home after the fight.

Later that afternoon, Whittier and her friends, Erica Alexander (Alexander), Sabrina Chase (Chase) and Jaronda Acres (Acres), were at Acres' aunt's house visiting. The women left the house to walk to some stores nearby. Acres and Alexander went to one store, while Whittier and Chase went to a different store. Outside the store, Whittier got into an argument with some women regarding the argument that had occurred earlier that day. After an older woman came outside and calmed everything down, Whittier, Alexander, Chase and Acres went back to Acres' aunt's house.

Around 4:00 or 5:00p.m., Holman and Whittier met up with Acres, Alexander, and Chase at the bus stop at the corner of St. Louis Avenue and Sarah Street. The group sat at the bus stop talking for a several hours.

Around 8:00p.m., as it was starting to get dark, [Hill] came around the corner and started shooting into the group. The first shot hit Holman in the chest and a second shot hit him in the arm. Alexander and Holman ran across the street onto the front porch of a house, where Holman blacked out. Although Acres had been shot three times in the leg, she and Chase ran to a gangway between two houses. Whittier collapsed onto the street after being shot twice, once in the chest and once in the arm. Whittier died as a result of the gunshot wound to her chest.

On July 7, 2005, police contacted Alexander and Chase and asked them to view a lineup. Both women identified [Hill] in the lineup as the shooter.

At trial, Alexander testified that although it was getting dark outside, there was enough artificial light in the area for her to see the shooter. Alexander stated the shooter was a black male with a light or caramel complexion, was 19-20 years old, was 5'7" to 5'9" tall, had a slim build and had his hair in twisties. Alexander testified that the shooter was not wearing anything to hide his face. Alexander identified [Hill] at trial as the man who shot at her and her friends.

Alexander testified that during the lineup the police told her to look at the men and to "see if [she saw] a person who was the shooter." Alexander testified she recognized [Hill] as the shooter "right away." Alexander stated the police did not make her try to pick someone out, and she did not feel pressure from anyone to do so. Alexander stated out of the five men in the lineup, two of the men were too tall to be the shooter and one man did not have his hair in twisties or braids. Alexander stated the detective specifically directed her not to base her identification on the men's hairstyles. Alexander testified that the men's hairstyles did not have much effect on her identification and that she picked [Hill] because she recognized him as the shooter.

Chase testified that although it was getting dark, the street lights had come on and there was enough light for her to see the shooter clearly. Chase testified that the

shooter was light skinned, skinny, a couple of inches taller than her, and had his hair in medium sized twisties. Chase identified [Hill] as the shooter in court.

Chase testified that during the lineup the police officer did not point anyone out to her or try to make her pick someone out of the lineup. Chase testified the officer instructed her to look to see if she saw the person she thought did the shooting but not to worry if she did not see him. Chase testified she identified [Hill] as the shooter because she recognized him by his face. Chase stated she identified [Hill] in the lineup because she saw him at the scene, not because he matched the description she had given to police.

Acres testified that the shooter was a black male, with twisties in his hair, but that she did not get a good look at him. Acres viewed a photo array which included a photograph of [Hill]. Acres pointed [Hill] out in the photo array and told detectives that she had seen [Hill] in her neighborhood prior to the shooting. Acres stated she did not get a good enough look at the shooter to identify him.

Holman identified [Hill] in court as the same man he fought with briefly the day of the shooting and who had shot him.

Homicide Detective Jody Ballman (Ballman) testified that Alexander described the shooter as a black male with a light complexion, 5'8" to 5'9" tall, skinny, and wearing medium braids in his hair. Ballman stated that Chase described the shooter to police as being 19 to 20 years old, with a light complexion, 5'6" to 5'7" tall, skinny, with medium length twisties in his hair. Ballman testified that after [Hill] was arrested, the police attempted to find four other people in custody that looked similar to [Hill] that were willing to participate in the lineup.

[Hill] did not present any witnesses at trial. At the close of the evidence, the trial court addressed [Hill]'s Motion to Suppress Identifications which had been filed prior to trial and had been taken with the case. [Hill] alleged that the identification procedures used by police during the physical and photo lineups were unduly suggestive. The court found that although the men in the lineup had different characteristics, they were all African-American males of the same age and were sufficiently similar for the lineup to be acceptable. The court denied the motion, finding that the witnesses had an independent opportunity to view the events and that the police procedures were permissible.

. . .

The jury found [Hill] guilty on all charges, including first-degree murder, two counts of first-degree assault, and three counts of armed criminal action. [Hill] filed a Motion for Judgment of Acquittal, or in the Alternative for a New Trial, but did not include issues related to the identification testimony or the propriety of the State's closing argument. The trial court denied the motion, and on November 20, 2008, the trial court sentenced [Hill] to a term of life without the possibility of

probation or parole on the first-degree murder conviction and to concurrent terms of life on the remaining convictions.

Resp't Ex. E at 2-6 (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b)).

On direct appeal, petitioner argued that (1) the trial court erred in denying his motion to suppress identifications, and in allowing testimony regarding the pretrial lineup and in-court identifications of him by Erica Alexander and Sabrina Chase; and (2) the trial court plainly erred in allowing the prosecutor to argue in closing that the evidence was uncontradicted and uncontroverted in violation of his Fifth Amendment right to stay silent. *Id.* at 6-7. The Missouri Court of Appeals found that the grounds were not preserved for appellate review and, therefore, reviewed them for plain error. *Id.* at 7. After review, the appellate court found no plain error and affirmed the conviction and sentences. *Id.* at 8-12.

Petitioner filed a timely motion for postconviction relief under Rule 29.15 of the Missouri Court Rules. Resp't Ex. F at 3 (Legal File). The motion court denied relief without holding an evidentiary hearing. *Id.* at 3.

On appeal from the denial of postconviction relief, petitioner argued that (1) trial counsel was ineffective for failing to investigate and call Courtney Woods and Josephine Woods to testify at trial because they would have provided him with an alibi; and (2) trial counsel was ineffective for refusing to allow him to testify at trial. Resp't Ex. I at 12-13 (Appellant's Statement, Br., and Argument). The Missouri Court of Appeals, Eastern District, applied the *Strickland* test to both of petitioner's claims, and it found that petitioner had failed to demonstrate that trial counsel was ineffective. Resp't Ex. at 3-8.

Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 1, 2014.

4

**Grounds for Relief**

1. Trial, appellate, and postconviction counsel were ineffective for failing to present evidence of his actual innocence through witnesses who were present in the area of the shooting but did not see Hill there.

2. Trial counsel was ineffective for failing to investigate and call his alibi witnesses.

3. Trial counsel was ineffective for advising him not to testify at trial.

4. Trial counsel was ineffective for failing to object to a verdict director based on transferred intent.

5. The trial court erred when it failed to suppress petitioner's identification from the lineups.

6. Trial counsel was ineffective by failing to investigate and impeach State witness Jason Holman with his prior misdemeanor conviction of driving while suspended.

7. Trial counsel was ineffective due to the cumulative effect of his errors.

**Procedural Default**

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id.* at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded

counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

**Standard**

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

Federal habeas review of an ineffective assistance of counsel claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111 (2009). First, a petitioner must overcome the high bar of *Strickland v. Washington*, 466 U.S. 668 (1984), by showing that (1) counsel's

performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." *Id.* at 688, 694. Second, under 28 U.S.C. § 2254, petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Both the *Strickland* standard and the standard set forth in § 2254 are highly deferential. Ultimately, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788.

1. *Ground One*

In ground one, petitioner argues that counsel was ineffective for failing to call as witnesses Mary Hill, Adrian Hill, Dana Merriweather, Rochelle Smith, "as well as alibi witnesses Josephine, Anthony, and Courtney Woods, and the testimony of Craig Hill, that would have demonstrated Hill's actual innocence."

Respondent argues that ground one is procedurally defaulted. Petitioner responds that the claim could have been presented to the state courts with more clarity but that the "substance" of the claim was presented to the state courts.

In his appeal from the denial of postconviction relief, petitioner argued that trial counsel was ineffective for failing to investigate and call Courtney and Josephine Woods, who would have provided him with an alibi. Petitioner testified during his deposition that Courtney and Josephine Woods had told his mother that he was at their house at the time the shooting occurred. Resp't Ex. G at 9 (Dep. Tr.). He told counsel about the witnesses and gave him their address and phone number. *Id.* Counsel endorsed them as witnesses. *Id.* at 8-9; Resp't Ex. B at 27 (Legal File). During his deposition, counsel testified that he knew the address and phone number for the witnesses. Resp't Ex. H at 10 (Dep. Tr.). He further testified that he called them

7

but they did not call him back. *Id.* He said the did not go to their house to attempt to talk to them. *Id.*

In denying relief on this claim, the Missouri Court of Appeals discussed the problems with petitioner's alleged witnesses:

> Trial counsel testified [during the evidentiary hearing] that [Hill] and his family had provided a variety of inconsistent alibis to police and to himself. [Hill] initially told police that on the night of the shooting, he was with his brother and his brother's friends; [Hill]'s mother told police that he was with her and other people on the night of the shooting; [Hill]'s aunt told police he was with her and some other people on the night of the shooting. [Hill]'s mother also told counsel that there were witnesses who could say that [Hill] was elsewhere at the time of the shooting. Trial counsel arranged for the grand jury to hear [Hill]'s alibi witnesses, but [Hill]'s mother did not give counsel the names of these witnesses, and she did not show up for the grand jury session with the witnesses when it was initially scheduled or when it was rescheduled. [Hill]'s mother later gave trial counsel the names, addresses, and phone numbers of the Woods witnesses, who were two new alibi witnesses, and counsel endorsed them as witnesses. However, counsel was unable to speak to either witness because they would not return his phone calls. On the morning of [Hill]'s trial, [Hill]'s mother showed up with a new set of witnesses and said they were the "real" witnesses, indicating that the Woods witnesses whom counsel had endorsed were not the "real" witnesses. Counsel was concerned about calling any of [Hill]'s alibi witnesses once he was presented with the "real" witnesses whom he had not endorsed. Counsel said that if he had called the "real" witnesses, the prosecutor would have "rammed that down his throat."
>
> [Hill] testified that on the day before [Hill]'s trial was initially scheduled to start, he and counsel discussed calling witnesses, and during that conversation, he gave counsel the names of the Woods witnesses, their addresses, and their phone numbers.
>
> In its Conclusions of Law and Order, the motion court recited that the parties were to provide testimony of witnesses by deposition, that [Hill] and counsel were deposed, but that the Woods witnesses failed to appear for scheduled depositions on more than one occasion. The motion court found that counsel was not ineffective in his pursuit of alibi witnesses. The court recited trial counsel's testimony about his efforts to secure alibi witnesses, including the Woods witnesses and the conflicting alibis. The court concluded from this testimony that counsel was not ineffective, and counsel's decision to not call alibi witnesses was reasonable. It also concluded that counsel's decision to not call a witness is virtually unchallengeable, particularly when the possibility exists of a fabricated alibi or that the witness will present perjured testimony. The court further found that [Hill] had not presented credible testimony that supported an alibi or that

there were alibi witnesses who were available and would have been willing to testify at trial.

Resp't Ex. K at 4-5.

The appellate court applied the *Strickland* standard and found that petitioner had failed to show that petitioner "failed to show that [Courtney or Josephine Woods] could have been successfully contacted or would have testified if called." *Id.* at 6. The court noted that they had refused to return counsel's calls and refused to appear for their depositions or the motion hearing. *Id.* The court also noted that counsel was concerned about calling any of petitioner's witnesses because "the prosecutor would have 'rammed them down his throat.'" *Id.* at 4.

The Missouri Court of Appeals' recitation of the facts is supported by the record. Petitioner failed to demonstrate that counsel was ineffective, and he has not shown that the state court's decision was contrary to clearly established federal law. As a result, petitioner is not entitled to relief on ground one of the petition. Moreover, to the extent that petitioner is attempting to bring claims he did not bring in his postconviction appeal – such as his claim that counsel should have investigated and called Mary Hill, Adrian Hill, Dana Merriweather, Rochelle Smith – his claims are procedurally barred, and he has not shown cause or prejudice for the default.

    2.    *Ground Two*

In ground two, petitioner argues that trial counsel was ineffective for failing to investigate and call his alibi witnesses.

This claim is duplicative of ground one. Petitioner mentions that his mother told counsel about some other possible witnesses she knew of who had seen him at the time of the shooting, but neither petitioner nor his mother told counsel who the witnesses were or where they could be

found. This claim is wholly unsupported by the record, and petitioner failed to raise it in his postconviction appeal. Therefore, this claim is both meritless and procedurally defaulted.

3.  *Ground Three*

In ground three, petitioner argues that trial counsel was ineffective for advising him not to testify at trial. Respondent contends that this claim is refuted by the record.

After the close of the State's evidence, the following colloquy occurred between the trial court and petitioner:

> THE COURT: All right. Let the record reflect that we're here in the courtroom. The jury is not present. Prosecution and defense are present. The State has rested and we're at the juncture where the strategic decisions have to be made by the defense whether or not to put on any evidence. Obviously, the defendant has an absolute constitutional right under our Federal and state constitutions not to testify and no mention can be made of the fact that he did not testify by the State.
>
> However, he has also the right to testify and the right is owned exclusively by the defendant. He can receive advice from learned counsel. He can receive advice from family members or anyone else whose opinion he values. He can also reflect on it at length, but ultimately the decision is the defendant's and the defendant's alone. So, at this time, Mr. Hill, you can just stay where you are. Please raiser your right hand.
>
> CRAIG HILL, duly sworn by the Court, testified as follows:
>
> THE COURT: Okay, you can put your hand down. . . . You just heard what I have just said about your right either to testify or not testify, you understand that, don't you?
>
> DEFENDANT: Yes.
>
> THE COURT: And you understand that the right which is yours and yours alone, you understand that?
>
> DEFENDANT: Yes.
>
> THE COURT: And that you should listen to the advice of people whose opinion you value, you understand that?
>
> DEFENDANT: Yes.

> THE COURT: And that you've had – you have an attorney on your right and an your left, you have two attorneys here, have you discussed this matter with your attorneys.
>
> DEFENDANT: Yes.
>
> THE COURT: All right. Have you sufficient time to reflect on it in your own mind?
>
> DEFENDANT: Yes.
>
> THE COURT: All right. So, what ultimately is your decision? Do you wish to testify or do you wish not to testify?
>
> DEFENDANT: Not to testify.

Resp't Ex. A at 408-09 (Trial Tr.).

The Missouri Court of Appeals denied this claim, citing the *Strickland* standard, stating, "Here, [petitioner] admitted he knew he had the right to testify and it was his decision, and counsel's advice not to testify constituted sound trial strategy because of [petitioner's] vulnerability on cross-examination in light of his multiple conflicting alibis." Resp't Ex. K at 8.

The appellate court's determination of the facts is supported by the record. Petitioner testified that it was his strategic decision not to testify. And the court applied the correct federal standard. As a result, petitioner is not entitled to relief on this ground.

4. *Ground Four*

In ground four, petitioner argues that counsel was ineffective for failing to object to a verdict director based on transferred intent. He contends that because the indictment only charged him with first-degree murder, the verdict director on transferred intent was improper. Respondent argues that this claim is procedurally barred and meritless.

Petitioner raised this ground in his motion for postconviction relief. However, he did not raise it on the appeal thereof. He argues that, nevertheless, he fairly presented his claim to the

11

state courts. Alternatively, he argues that the procedural bar is excused because postconviction counsel was ineffective for not bringing it on appeal. Petitioner is incorrect.

Issues not raised before the Missouri appellate court, in either a direct appeal or in the appeal of the denial of a Rule 29.15 motion, as appropriate, are procedurally defaulted and cannot be raised pursuant to § 2254, absent a showing of cause and prejudice. *See Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003).

Petitioner's claim that postconviction counsel was ineffective failing to bring this claim on appeal is wholly conclusory, and does not allege any facts that might demonstrate his claim. Ground four is procedurally defaulted, and petitioner is not entitled to relief on this ground.

Moreover, this claim arises under state law and is not cognizable in federal habeas relief.

Finally, in discussing this ground, the motion court stated: "[Petitioner] has cited no legal authority that this is not permitted and the Court finds the claim without merit." Resp't Ex. F at 123. Petitioner has not cited any cases from the United States Supreme Court demonstrating that he is entitled to relief on this ground. For each of these reasons, petitioner is not entitled to relief on this ground.

5. *Ground Five*

In ground five, petitioner argues that the trial court erred when it failed to suppress petitioner's identification from the lineups. Petitioner contends that the lineup was impermissibly suggestive because some of the other persons in it were taller than petitioner or did not have the same hairstyle. Petitioner contends that the Court should review this claim *de novo*.

On direct appeal, the court found that petitioner had failed to preserve the issue for appeal. Resp't Ex. E at 7. Petitioner asked the court to review it for plain error, and the court

did so. *Id.* "Under plain error review, this Court must first determine whether the trial court actually committed an evident, obvious, and clear error that affected a substantial right. Then, we must determine whether the error resulted in a manifest injustice or a miscarriage of justice. *Id.* The appellate court found that petitioner had failed to show that the "pre-trial identification procedures were impermissibly suggestive . . ." *Id.* at 10. The court also found that petitioner had failed to show prejudice because the witnesses identified him in court as well. *Id.*

> All of the participants were African-American men of approximately the same age. The trial court found that the men were sufficiently similar for the lineup to be acceptable. The record indicates that the police made reasonable efforts to find people that were physically similar to [petitioner] for the lineup and [petitioner] has failed to demonstrate otherwise.
>
> Alexander and Chase testified that there was sufficient light for them to clearly see the shooter. Both women testified that they identified [petitioner] in the lineup because they recognized [petitioner] as the shooter. Both women also testified that the police neither pointed anyone out to them nor pressured them to make an identification.

*Id.* at 9.

When a state court reviews a claim for plain error, the district court must review the state court's claim with the "deferential lens" of the AEDPA. *Shelton v. Purkett*, 563 F.3d 404, 408 (8th Cir. 2009).

The Missouri Court of Appeal's decision that there was no manifest injustice was not unreasonable. The witnesses testified that they clearly saw petitioner at the time of the incident. They stated that the police did not coerce them into identifying anyone in the lineup. And they recognized petitioner in Court. As a result, petitioner is not entitled to relief on this ground.

6. *Ground Six*

In ground six, petitioner argues that trial counsel was ineffective by failing to investigate and impeach State witness Jason Holman with his prior misdemeanor conviction of driving while suspended. Petitioner admits that he did not raise this claim in his motion for postconviction

relief. He says cause and prejudice exists because he was in prison when the motion was filed and he did not have access to the State's criminal records.

Respondent argues that this claim is procedurally barred and that petitioner cannot show *Strickland* prejudice because trial counsel impeached Holman with a prior felony conviction. Respondent is correct.

Because he did not present this claim to the state courts, this claim is procedurally barred. He cannot show prejudice because nothing external to the defense prevented him from bringing this claim.

Furthermore, this claim is meritless. On cross-examination, trial counsel asked Holman if he had ever been convicted of a felony. Resp't Ex. A at 311. Holman replied that he had been convicted for carrying a concealed weapon. *Id.* Petitioner has failed to show that, had trial counsel also elicited that Holman had a misdemeanor offense as well, the jury would have returned a not guilty verdict. As a result, petitioner is not entitled to relief on this ground.

7. *Ground Seven*

In ground seven, petitioner argues that trial counsel was ineffective due to the cumulative effect of his errors.

Cumulative error is not recognized under clearly established federal law. *See Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006). As a result, petitioner is not entitled to relief on this ground.

For these reasons, petitioner is not entitled to federal habeas relief. Furthermore, petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th

Cir. 2002) (quotation omitted).  Thus, the Court will not issue a certificate of appealability.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that the petition for writ of habeas corpus is **DENIED**, and this action is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability.

A separate Judgment will issue forthwith.

Dated this 10th day of November, 2016.

     /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE